[No. 28604. Department One. April 10, 1942.]

J. F. COLLIER, *Respondent,* v. E. C. MILLER CEDAR
LUMBER COMPANY, *Appellant.*[1]

*L. B. Donley,* for appellant.

*F. L. Morgan,* for respondent.

MAIN, J.—The plaintiff brought this action upon four
promissory notes or bonds, each in the principal sum
of one hundred dollars, seeking a money judgment.
The defendant admitted liability and that the notes
were in default, and pleaded that the sole right of ac-
tion upon them rested in the trustee, according to the
terms and conditions of the notes and what is called a
"mortgage and trust agreement." The cause was tried
to a court without a jury, and resulted in findings of

[1]Reported in 124 P. (2d) 555.

fact from which it was concluded that the plaintiff had a right to recover. From the judgment entered in accordance with the prayer of the complaint, the defendant appealed.

Prior to April 2, 1930, the Hayes & Hayes Bank of Aberdeen had become insolvent, and was in the process of liquidation. The respondent was a depositor in the bank to the extent of forty-one hundred dollars. The appellant, the E. C. Miller Cedar Lumber Company, was indebted to the bank in a very large sum of money. By arrangement with the liquidator, it was agreed between the bank and the appellant that, if the appellant could acquire the interest of the depositors, it might offset their prospective dividends upon its obligation, thereby reducing its obligation to the extent of such dividends.

Thereafter, an agreement was entered into between the appellant and a large number of depositors, by which it was agreed that the depositors would assign their deposits to the appellant to the extent of ten per cent of the amount thereof. This ten per cent was to be paid by the liquidator out of the first dividends to which the depositors would otherwise be entitled.

The agreement provided that notes should be issued to the extent of two hundred thousand dollars, payable to the Grays Harbor National Bank, which notes were to be secured by the mortgage and trust agreement in which the bank was named as trustee. Each note had attached to it interest coupons calling for the payment of the interest thereon semiannually. After the notes and the mortgage and trust agreement had been prepared and the latter instrument filed for record, the notes were delivered and by their terms were to become due October 15, 1940. The record furnishes no information as to the status of the notes other than of

the ones here sued upon. Subsequent to the due date of the notes, the present action was brought.

The question for determination upon this appeal is whether the respondent had a right to bring an individual action upon the notes which he held, or whether only the trustee had a right to maintain such action.

So far as here material, each of the notes was as follows:

"For Value Received, E. C. Miller Cedar Lumber Company, (hereinafter called the mortgagor), a corporation, organized and existing under and by virtue of the Laws of the State of Washington, hereby promises to pay to the bearer of this note, or in case this note be registered, then to the registered holder thereof, One Hundred Dollars ($100.00) on or before the 15th day of October, 1940, at the Grays Harbor National Bank of Aberdeen, Washington, and to pay interest thereon from October 15, 1930, at the rate of seven per centum per annum, payable semi-annually, on the 15th day of April and the 15th day of October in each year. All payments of interest on this note shall be made at the banking house of the Grays Harbor National Bank of Aberdeen, Washington, in the City of Aberdeen, Washington, upon presentation and surrender of the respective coupons hereto attached as they shall severally become due, both principal and interest being payable in legal tender of the United States of America, without deduction for any tax, assessment or governmental charge which the mortgagor or its successors or assigns or the trustee hereinafter mentioned may be required to pay under or by reason of any present or future law of the United States of America, or of any State, Territory, County or municipality therein; and as to such interest, without deduction for any tax which the mortgagor or its successors or assigns may be required to pay thereon, or to retain therefrom under any present or future law of the United States of America.

"This note is one of a series of notes issued and to be issued to an amount not exceeding in the aggregate

the principal sum of $200,000., under the provisions of and equally secured by a trust indenture bearing date October 15, 1930, duly executed, acknowledged, recorded and filed and delivered by the mortgagor to the Grays Harbor National Bank, of Aberdeen, Washington, as trustee. For a description of the property thereby mortgaged and pledged, the nature and extent of the security, and the rights of the holders of notes in respect to such security, reference is hereby made to said indenture which will be recorded and filed in the records and files in the office of the County Auditor of Grays Harbor County at Montesano, Washington. In case of default in the payment of principal or interest, this note may become or be declared due and payable in the manner and with the effect provided in said indenture [the mortgage and trust agreement]. . . . This note is a general obligation of the said mortgagor."

Section four of article five of the mortgage and trust agreement provides that:

"No holder of any note or coupon hereby secured shall have any right as such holder to institute any suit, action or proceeding in equity or at law against the mortgagor or any other person or corporation on account of any such note or coupon, for the foreclosure of this indenture or for the execution of any trust hereof, or for any other remedy hereunder or by reason hereof, all rights of action hereunder and on account of the notes and coupons hereby secured being vested exclusively in the trustee, except as herein specifically provided."

Section five of the same article is as follows:

"No remedy herein conferred upon or reserved to the trustee is intended to be exclusive of any other remedy or remedies; but each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder, or now or hereafter existing at law or in equity or by statute."

The question, more specifically stated, is whether the note and mortgage, read together, constitute a restriction upon the right of the holders of the notes to

maintain an individual action thereon, as distinct from an action by the trustee.

It will be observed that the notes recite that, for a description of the property mortgaged, the nature and extent of the security, and the rights of the holders of the notes in respect to such security,

" . . . reference is hereby made to said indenture which will be recorded and filed in the records and files in the office of the County Auditor of Grays Harbor County at Montesano, Washington."

It will be noted that, in section four of article five of the mortgage and trust agreement, after providing that no holder of any note or coupon shall have any right as such holder to institute any suit, action, or proceeding in equity or at law against the mortgagor or any other person or corporation on account of such note or coupon, for the foreclosure of the mortgage and trust agreement, it is said,

" . . . all rights of action hereunder and on account of the notes and coupons hereby secured being vested exclusively in the trustee, except as herein specifically provided."

Then comes section five, which, after stating that no remedy conferred by the mortgage and trust agreement upon or reserved to the trustee is intended to be exclusive of any other remedy or remedies, provides:

" . . . but each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder, or now or hereafter existing at law or in equity or by statute."

The respondent says that this latter provision, properly construed, gives him a right to maintain an individual action after the notes have become due and are in default. The appellant says that the cumulative provision does not attempt to classify or define the kinds of action that may be brought, or the persons

who may maintain an individual action, but only seeks to enlarge the remedies already provided for, for the protection of the bondholders as a whole.

In the case of *Moody v. Pacific Steamship Co.*, 174 Wash. 256, 24 P. (2d) 609, there was a provision in the bonds in that case to the effect that:

"The holder of this bond shall have no right of action thereon or under said mortgage, except as provided in that instrument."

In that case, the bonds were secured by a mortgage, and a trustee was named therein. The mortgage in that case contained a provision that, except as therein expressly provided to the contrary,

". . . no remedy herein conferred upon or reserved to the Trustees or to the holders of bonds is intended to be exclusive of any other remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, or in equity or by statute."

This provision is substantially the same as the cumulative provision in the mortgage and trust agreement in the case now before us. Construing that provision and making reference to other provisions in the mortgage in that case, it was held that an individual had no right to maintain action upon the bonds. It was there said:

"Appellant finally argues that the cumulative provision contained in article VIII, § 7, of the mortgage, which we have quoted above, preserves the common-law right of the individual bondholder to sue upon the bond. That section is but one of many providing for *remedies* upon default. If that section be read in the light of the context supplied by the entire article, it will be apparent, we think, that the instrument looks to and compels concerted, and not individual, action. The mortgage in its entirety seeks to provide for harmonious and cohesive action, and not a disintegrated

one. The cumulative provision does not attempt to classify or define the kinds of action that may be brought or the persons who may maintain them, but simply seeks to enlarge the remedies already provided for by it for the protection of the bondholders as a whole. Under the provisions of the bonds themselves, the common-law rights of action are taken away. Section 7 of article VIII of the mortgage does not purport to create a *right of action* where none existed before, but merely provides for cumulative or additional *remedies* where right of action already exists."

It is true that, in that case, the statement that the holder of the bonds should have no right of action thereon or under the mortgage, except as provided in the mortgage, was in the bond. In this case, the provision in the latter part of section four of the article mentioned says:

" . . . all rights of action hereunder and on account of the notes and coupons hereby secured being vested exclusively in the trustee, except as herein specifically provided."

This provision, as we view it, has the same effect as the provision in the bonds in the case just cited. It is also true that, in that case, there were other provisions in the bond lending more or less support to the construction given the bonds and mortgage. However that may be, it appears to us that the legal effect of the two provisions is the same.

The case of *Colsky v. Eyres Storage & Distributing Co.*, 178 Wash. 404, 34 P. (2d) 1114, is not material here, except to the extent that it approves of the holding in the *Moody* case, and it was therein stated:

"Being satisfied that the *Moody* case is both sound in law and just and equitable in its practical application, we reaffirm its doctrine."

Our attention is especially called to a statement in the notes to the effect that they are general obligations

of the mortgagor; but we do not believe that this statement has any special significance other than to indicate and make definite that the notes were not to be paid out of a special fund. *Eugene v. Willamette Valley Co.,* 52 Ore. 490, 97 Pac. 817.

We see no substantial distinction between the case here presented and the *Moody* case, and upon the authority of that case the judgment in this case cannot be sustained.

The respondent especially calls our attention to two cases which will now be considered. The first is *Bank of California v. National City Co.,* 138 Wash. 517, 244 Pac. 690. In that case, bonds were issued secured by a mortgage, and the principal question there involved was whether the bonds were negotiable instruments. Attention is called in the opinion to a provision in the bonds, after stating that they were secured by a mortgage, describing it in general terms, as follows:

" . . . to which Mortgage reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, and the rights of the Pacific Company, the Trustees and the respective holders of the said Bonds with respect thereto."

There is no provision there, as here in section four of the mortgage and trust agreement, above referred to, that all rights of action thereunder and on account of the notes and coupons thereby secured are vested exclusively in the trustee, except as therein specifically provided. While the individual action was sustained in that case, as we view it, it is not authority for sustaining the judgment in this case.

The other case relied on by the respondent is *Snyder v. Yakima Finance Corp.,* 174 Wash. 499, 25 P. (2d) 108, in which it was held that there could be an individual action on a promissory note which was

secured by a mortgage which contained a declaration of trust and named a trustee. In that case, however, after referring to the note and mortgage and trust agreement, it was said:

"It will be observed that, while this provision permits the acceleration of the maturity of the note upon certain contingencies, it does not restrict the note holder in his common-law or statutory rights of action. It is the rule that, where a series of negotiable notes or bonds are held by various individuals and are secured by a trust mortgage, or deed of trust, if the notes or bonds contain no restriction, either directly or by proper reference to the trust mortgage or deed of trust, against an action thereon, then such holder may maintain a separate action without reference to the provisions of the trust instrument, regardless of the restrictions therein which might be otherwise binding."

Following that, the case of *Moody v. Pacific Steamship Co., supra,* was distinguished, and it was pointed out, in the latter case, that there was a restrictive provision against such action, while there was none in the case there being considered.

Our attention is called by the respondent to certain rules of construction, and it is said that restrictive provisions are to be strictly construed, and that, where there is ambiguity, the interpretation would be against the party preparing the obligation. These rules can have no application here, in view of the fact that, in *Moody v. Pacific Steamship Co., supra,* a definite construction was placed upon the cumulative provision there involved, which, as indicated, is, in legal effect, the same as the one in the present case.

There is no claim in this case, apparently, that the trustee had at any time refused to make an attempt to collect the notes.

The judgment will be reversed and the cause re-

manded, with direction to the superior court to dismiss the action.

ROBINSON, C. J., STEINERT, BLAKE, and DRIVER, JJ., concur.